In re CONTINENTAL AIRLINES COR-
PORATION, Continental Air Lines,
Inc., Texas International Airlines, Inc.,
TXIA Holdings Corporation, Debtors.

Bankruptcy Nos. 83–04019–H2–5,
83–04020–H1–5, 83–04021–H3–5
and 83–04022–H3–5.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

April 17, 1986.

See also, 40 B.R. 299.

John J. Gallagher, Charles L. Warren, Janet L. Berkowitz, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for Continental Air Lines, Inc., et al.

Jay D. Roth, Larry Drapkin, Taylor, Roth & Hunt, Los Angeles, Cal., for Union of Flight Attendants.

Myron M. Sheinfeld, Lenard M. Parkins, Sheinfeld, Maley & Kay, Houston, Tex., Harvey Miller, Bruce Zirinsky, Weil, Gotshal & Manges, New York City, for Continental Air Lines, Inc. and Texas Intern. Airlines, Inc.

Claude D. Montgomery, Booth, Marcus & Pierce, New York City, for Official Union Labor and Pension Creditors' Committee.

ORDER TEMPORARILY DISALLOWING AND HOLDING IN ABEYANCE CLAIM FILED BY UNION OF FLIGHT ATTENDANTS FOR DAMAGES ARISING FROM NEW YORK AIR GRIEVANCE AND ESTIMATING THAT CLAIM AT ZERO VALUE PURSUANT TO SECTION 502(c) OF THE UNITED STATES BANKRUPTCY CODE

T. GLOVER ROBERTS, Bankruptcy Judge.

This matter came on for consideration of the Motion of Continental Airlines, Inc. ("CAL") and Texas International Air Lines, Inc. ("TXIA"), Debtors and Debtors-In-Possession For Summary Judgment disallowing the claim filed by the Union of Flight Attendants ("UFA") against Texas International Airlines, Inc., for damages arising from a grievance relating to the operation of New York Airlines, Inc. (the "New York Air Grievance"). CAL and TXIA have also asked that this claim be estimated at zero value pursuant to Section 502(c) of the United States Bankruptcy Code ("Code"), 11 U.S.C. § 502(c). Upon consideration of the pleadings, the statements of undisputed material facts, the applicable law and the oral argument of the parties on this matter on November 18, 1985, it appears to the Court that in order to facilitate the expeditious administration of these Chapter 11 cases, as well as the confirmation of the Debtors' Third Amended Plan of Reorganization now before the Court (or any amendment thereto) (hereinafter collectively referred to as the "Plan"), that the said claim of UFA should be temporarily disallowed, held in abeyance and estimated at zero value for voting purposes under the Debtors' Plan pursuant to Section 502(c) of the Code, and that this claim should be liquidated through proceedings independent of this reorganization proceeding. This Court

hereby enters the following Findings of Fact, Conclusions of Law, and Order:

### Findings of Fact and Background

1. Notice of the Debtors' Motion for Summary Judgment was timely given to UFA, and such Notice was adequate pursuant to 11 U.S.C. § 102.

2. UFA's claim (UFA Claim No. 3, filed April 29, 1985) is premised on a grievance which protested the failure of Texas International Airlines, Inc., (TXI) to apply the terms of its collective bargaining agreement with the Association of Flight Attendants (later succeeded by UFA) to the flight attendants employed by New York Airlines, Inc., as an alleged "successor" who, UFA contends, was bound to said agreement by the "successor clause," Sec. 29(c) of the Texas International Flight attendant collective bargaining agreement. This grievance was filed in December 1980, and remained unresolved at the date the Chapter 11 petition was filed herein, September 24, 1983. UFA filed its bankruptcy claim "on behalf of itself and UFA represented employees."

3. UFA claims damages in the amount of $52,970,919 for its New York Air Grievance. UFA Proof of Claim No. 3, ¶ 3. UFA's claim was calculated by UFA to represent total wages and benefits (i.e., total flight attendant labor costs) which New York Air would have incurred if the TXIA flight attendant contract had been applied to New York Air flight attendants from December 1980 through May 1986, with no offset for amounts actually paid by New York Air or Texas International to their flight attendants. The expiration date of the TXIA flight attendant contract was October 1, 1983.

4. UFA's damage claim was prepared by their apparently estimating the number of flight attendant crews that would have been required at New York Air and calculating the costs of such flight attendants at New York Air (NYA) as if they were earning the rate of pay according to the TXIA–AFA collective bargaining agreement.

5. Litigation history in this matter between the parties is as follows:

### A. Proceedings before the National Mediation Board

In May, 1981, the International Association of Machinists ("IAN"), commenced a proceeding before the NMB in which the IAM alleged that TXI, TAC (Texas Air Corporation, the parent of CAL and NYA) and NYA constituted a "single carrier" for Railway Labor Act purposes, and that the IAM certification as bargaining representative for certain employees at TXI should be extended to include employees within that craft or class working for NYA. ALPA and AFA (the predecessor of UFA, hereafter "UFA") entered an "appearance" but declined to join as "parties" or to join the IAM's claim for relief; the NMB ruled that ALPA and UFA "will be bound by the decision of the Board in this case...." Texas Air Corp., 8 N.M.B. 687 (1981). ALPA and UFA have since fully participated in all NMB proceedings in connection with this matter.

Hearings in the NMB proceeding began on September 1, 1981, and continued for 16 hearing days at irregular intervals through February 1982, TXI, NYA, TAC, ALPA and UFA were represented by counsel at all proceedings before the NMB. Each offered exhibits, and each examined and cross-examined witnesses. ALPA and UFA were represented by the same counsel. The proceedings have been continued by agreement of the parties pending determination by the NMB of the Teamsters' status at the post-merger Continental Airlines. Texas Air Corp., 10 N.M.B. 265 (1983). Resolution by the NMB of this dispute will determine the representation rights of ALPA and AFA with respect to New York Air employees, according to CAL's brief.

### B. Federal Court Litigation

In August 1981, ALPA filed a complaint under the Railway Labor Act, 45 U.S.C. § 151 et seq. in the District Court for the Southern District of Texas. In February

1982, UFA filed a virtually identical complaint. Each complaint sought an injunction that would require TXI to participate in the arbitration of the "group grievance" already described herein.

Thereafter, ALPA and TXI filed cross motions for summary judgment. ALPA claimed that a determination of whether TXI was bound to apply the TXI contract to NYA pilots presented a "minor dispute" within the jurisdiction of the system board of adjustment, arguing that the grievance involved an interpretation of the successorship clause in the parties' collective bargaining agreement. TXI opposed ALPA's motion for summary judgment on three grounds: first, that ALPA's claims were barred by *res judicata;* second, that ALPA's claims involved a representation dispute over which the system board had no jurisdiction; and third, that New York Air pilots were indispensable parties.

The District Court held that because ALPA's claims had an "arguable basis" in a contractual provision which purported to make the TXI contract binding on the company's "successors," the claims fell within the "broad grievance arbitration provision" of the parties' contract and were thus "minor" in nature. The District Court granted summary judgment in ALPA's favor. Without motions, briefs or notice, the court *sua sponte* included UFA's claims in its opinion and judgment, and also granted summary judgment in favor of AFA.

TXI filed an appeal, which is presently pending in the United States Court of Appeals for the Fifth Circuit, but has been stayed pursuant to the Bankruptcy Code, 11 U.S.C. § 362(a)(2).

### Conclusions of Law

1. In its Order of September 26, 1985, this Court granted the Debtors' Motion to Estimate All Contingent, Unliquidated Employee Claims for Purposes of Chapter 11 Plan Confirmation Pursuant to Section 502(c) of the Bankruptcy Code. *Inter alia,* this Court found in that Order that "in going through this process however, several Courts have held that § 502(c) of the Bankruptcy Code creates an affirmative, mandatory duty on a Bankruptcy Court to estimate an unliquidated or contingent claim afixing or liquidating the claim would 'unduly delay' the reorganization proceeding. *Matter of Brints Cotton Marketing, Inc.,* 737 F.2d 1338, 1340–41 (5th Cir.1984)" at page 4. Later in that Order the Court stated that "In applying the estimation process, this Court is mindful that it is bound by the legal rules which govern ultimate value of the claims", citing *Brints* and *Bittner v. Borne Chemical Co., Inc.,* 691 F.2d 134 at 135 (3d Cir.1982). The Court also realized that "in estimating a claim, the Bankruptcy Court should use whatever method is best suited to the circumstances." *Id.*

2. The instant claim of UFA is a contingent and unliquidated claim against TXIA and its bankrupt estate.

3. The UFA New York Air Grievance claim filed against TXIA is therefore disallowed at this time and valued at zero value for voting purposes under the Debtors' Plan. *See Bittner v. Borne Chemical Co., Inc.,* 691 F.2d 134 (5th Cir.1982); *In re Ram Manufacturing, Inc.,* 36 B.R. 822, 825 (D.D.Pa.1984).

4. The value, if any, of UFA's claim against TXIA should be determined through pending existing proceedings independent of this reorganization proceeding.

5. The above matter pending before the Fifth Circuit Court of Appeals creates a process by which the claimants here, UFA, will have their claims determined and their due process rights preserved. However, this approach also takes cognizance of the rights of both the debtors and other creditor groups to receive distribution of allowed claims, which might well be unnecessarily delayed for a lengthy period of time, should this Court await the outcome of the Fifth Circuit litigation. As this Court previously recognized in the Estimation Order described above, awaiting the end of that litigation process would "hamper the efficient administration of the estate and quite probably delay the reentry of the Debtor

into the normal business world and unnecessarily delay distribution of allowed claims to other creditor groups. "Clearly, the broad equitable principle applies here that 'creditors should not be disadvantaged vis a vis one another by legal delays attributable solely to the time consuming process procedures inherent in the administration of the Bankruptcy laws.'" *Matter of Brints Cotton Marketing, Inc.* Ibid.

6. The Court concludes, in balancing all interests, that the most expeditious and equitable manner to process this claim as well as to consider the motion of the Debtor herein, is to therefore temporarily disallow the UFA New York Air Grievance claim filed against TXIA and value that claim at zero for voting purposes under the debtors plan. The value if any, of UFA's claim against TXIA should be determined through subsequent proceedings, independent of this reorganization matter, as follows:

a) The right of UFA to pursue the liquidation and resolution of the claim filed against TXIA for damages arising from the New York Air Grievance is preserved. A hearing date shall immediately be set for purposes of allowing the § 362 stay to be lifted in order that the Fifth Circuit matters be completed. Should a final order be entered in the independent litigation described above with an adjudication in favor of UFA, the amount for which the Debtors are liable shall then be allowed in full as a claim in this Chapter 11 proceeding. Likewise, should a final order be entered in that independent litigation directing that final resolution of these UFA claims be effectuated through binding arbitration, and should such final, binding arbitration result in claims being awarded in favor of UFA, those claims shall be allowed in full in this Chapter 11 proceeding. If the Debtors' Plan has not been fully consummated at the time of either the entry of such final order described above or the entry of an arbitration award per the above process, the Debtors shall be allowed to amend the Plan, after notice and a hearing, for purposes of establishing the method of payment of said UFA claims.

b) If the Plan has been fully consummated at the time of the establishment of the UFA claims, then the Debtors may proceed to pay the claims without further proceedings before or orders of this Court, and in the absence of such payment, UFA may proceed with collection efforts under applicable non-bankruptcy law without further proceedings before or orders of this Court.

c) If the litigation or arbitration procedures results in a final order of the Court or arbitration award in favor of the Debtors, the UFA claim is extinguished.