In re TRANSAMERICAN NATURAL GAS CORPORATION, f/k/a GHR Energy Corp. and Good Hope Refineries, Inc., TransAmerican Pipeline Corporation f/k/a GHR Pipeline Corp. and Southern Pipeline Corporation, Southern States, Inc., Southern States Exploration, Inc., Laredo Exploration, Inc., Southern Petroleum Trading Company, Ltd., TransAmerican Gas Transmission Corporation, f/k/a GHR Transmission Corp. and Southern Gas Transmission Co., and JRS Realty, Inc., Debtors.

In re the GHR COMPANIES, INC., f/k/a Good Hope Industries, Inc.

Bankruptcy Nos. 84–03474–H1–5, 84–03475–H2–5, 84–03476–H1–5, 84–03477–H2–5, 84–03478–H3–5, 84–03479–H1–5, 84–03480–H1–5, 86–05539–H2–11.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Aug. 14, 1987.

**664**

John Nabors, J. Michael Dorman, Mike Crow, Lidell, Sapp & Zivley, Houston, Tex., for debtors (respondents).

Joseph M. Hill, McLain, Cage, Hill & Niehaus, Houston, Tex., for unsecured creditors.

Richard W. Bussoff, Gilbert L. Hamberg, Monroe & Lemann, New Orleans, La., John R. Banks, Jr., Levin, Roth & Kasner, Houston, Tex., for movant.

## ORDER

MANUEL D. LEAL, Bankruptcy Judge.

Came on for consideration Louisiana Power & Light Company's Emergency Motion for Expedited Hearing, or Alternatively Request to Shorten Notice, on Emergency Motion to Stay of the Cash Out Election Under Debtors' Plan of Reorganization Pending Appeal and Emergency Motion of Louisiana Power & Light Company for Stay Pending Appeal. This court granted Louisiana Power & Light's Emergency Motion for Expedited Hearing on August 7, 1987 and issued notices for such an evidentiary hearing to be held on August 10, 1987, for the purpose of estimating the claim of Louisiana Power & Light Co. ("LP & L"). The hearing was conducted on August 10, 1987. Having considered the evidence and arguments, and after careful consideration of the pleadings and the record in this matter, this court estimates LP & L's claim at $10,569,105.74 and denies LP & L's Motion for Stay Pending Appeal.

## FACTS

The debtor, commonly called "TransAmerican", is a company with over a billion dollars in assets, over eight hundred million dollars in liabilities and has been in bankruptcy twice, once in Massachusetts, and since 1983, in this district. As it approaches the confirmation hearing set for less than four days hence, TransAmerican has been involved in liquidating more than 1200 claims. Not all of its claims are liquidated. Pursuant to 11 U.S.C. section 502(c)(1) and Federal Rule of Bankruptcy Procedure 3018(a), this court, on August 5, 1987, held a hearing at which representatives of unliquidated claimants came before the court along with representatives of the debtor. The purpose of the August 5, 1987 hearing was to temporarily estimate unliquidated claims solely for voting on a plan of reorganization and an optional cash-out election provided in the plan. All creditors

were notified of the process and the hearing date pursuant to this court's order of June 15, 1987. Several hundred claim holders agreed with the values proposed by the debtor. Several hundred other holders did not come forward after due notice and opportunity for hearing. A vast minority could not settle their differences, even for temporary purposes, and came before the court for a hearing on the noticed date.

LP & L was one such claimant. Trans-American operated, and hopes to shortly resume operations of, an oil refinery in Louisiana. In 1981, it entered a contract with LP & L, the local utility, for electric service. Within two years, the TransAmerican entities filed for protection under Chapter 11 of the United States Bankruptcy Code. During the pendency of the case, it shut down the refinery and expressly rejected the contract with LP & L pursuant to the January 24, 1984 order of Judge Kingsmill in the GHR Transmission Corp. bankruptcy originally filed in the U.S. Bankruptcy Court for the Eastern District of Louisiana.

LP & L seeks to recover over $38 million. To arrive at that figure, LP & L computed the amount it would be entitled to pursuant to the contract's liquidated damages clause based on a rate schedule set by the Louisiana Public Service Commission.

TransAmerican objected to the LP & L claim. TransAmerican maintains that at the rejection of the executory contract, it ceased to owe LP & L anything. It valued the claim of LP & L at zero.

## ISSUE

The issue is the value to be judicially estimated solely for the purpose of voting by LP & L on the debtor's plan of reorganization and for the purpose of LP & L's electing to participate in a cash out election pursuant to the plan. It is not the purpose of this order and of the August 5, 1987 and August 10, 1987 hearings, to establish the amount of LP & L's claim for payment. The amount claimed by LP & L is disputed by the debtor and is the subject of other proceedings to be determined at a later date as provided under the Bankruptcy Code and the Bankruptcy Rules.

LP & L asserts a value of $38,271,067.65 in its proof of claim based on its calculation pursuant to the liquidated damages clause in the contract duly rejected by the debtor in January, 1984. The debtor claims a zero value on LP & L's claim on the grounds that the rejection of the contract was in its entirety which included the liquidated damage clause.

## JURISDICTION

This court has jurisdiction of this matter as a core proceeding. Core proceedings include those that are "matters concerning the administration of the estate" and "allowance or disallowance of claims against the estate." 28 U.S.C. section 157. Matters concerning valuation of claims, even for voting purposes only, have been provided for by Congress in the Code, at section 502(c). At least one circuit has mentioned that such an exercise is a matter of core jurisdiction. *See A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994 (4th Cir.1986).

## LEGAL DISCUSSION

This court is required to make an estimate of claims for voting purposes only when to do otherwise would delay the case. Section 502(c)(1) mandates such an estimation:

(C) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claims, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.

Bankruptcy Rule 3018(a) states that the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan. See also 3 Collier on Bankruptcy § 502.03 at pp. 502–71—75 (15th ed. 1987). Congress intended that unliquidated claims be "dealt with" and that "all claims against the debtor be converted into dollar amounts." *Addison v. Langston (In re*

*Brints Cotton Marketing, Inc.*), 737 F.2d 1338, 1340 (5th Cir.1984) (quoting S.Rep. No. 989, 95th Cong.2d Sess. 22 and 65, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5808 and 5758, 5851); *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. IML Freight, Inc.*, 789 F.2d 1460, 1463 (10th Cir.1986); *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.*), 761 F.2d 1374 (9th Cir.1985); *In re Continental Airlines Corp.*, 60 B.R. 903 (Bankr.S.D.Tex.1986); *In re Amarex, Inc.*, 61 B.R. 301 (Bankr.W.D.Okla.1985); [1] *In re Nova Real Estate Investment Trust*, 23 B.R. 62 (Bankr.E.D.Va.1982). *See also National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513, 530 n. 12, 104 S.Ct. 1188, 1198 n. 12, 79 L.Ed.2d 482 (1983).

The method of estimation is not set out in the Code or Rules despite the inclusion of the requirement to estimate. Thus, the bankruptcy court is governed by traditional rules governing the estimation of the ultimate value of the claim, and the bankruptcy court should use whatever method is best suited to the circumstances to fix the claim. *In re Brints Cotton Marketing, Inc.*, 737 F.2d 1338, 1341 (5th Cir.1984); *Bittner v. Borne Chem. Co.*, 691 F.2d 134 at 135. "The principal consideration must be as an accommodation to the underlying purposes of the Code." *Bittner*, 691 F.2d at 135.

It has been held that it was error *not* to estimate claims only for voting purposes prior to confirmation. *In re Pizza of Hawaii, Inc.*, 40 B.R. 1014 (D.Haw.1984), *aff'd*, 761 F.2d 1374 (9th Cir.1985). The district court in that case mentioned the affirmative duty of the bankruptcy court to estimate unliquidated claims for confirmation purposes because to refrain from such an estimation would unduly delay the administration of the case. On appeal, the circuit court opinion articulated that no attempt at a feasibility analysis can be made without the benefit of an estimate of an outstanding claim. *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir.1985).

This court is satisfied that it would substantially delay the administration of this bankruptcy case—costing the debtor and its 1200 creditors time and money—if the few remaining unliquidated claims were not temporarily estimated for purposes of voting on the debtor's plan. This court is satisfied that LP & L's claim is unliquidated, is not close to being settled, and that to proceed to confirmation absent its temporary estimation, would potentially be reversible error.

In the Bankruptcy Code, Congress provides for the lawful rejection—or breach—of unfavorable executory contracts. *See* 11 U.S.C. sections 365(a) and (g). The policy behind this Congressional alteration of the agreed relationship between the parties is the successful rehabilitation of the Chapter 11 debtor. *See Bildisco*, 465 U.S. at 527, 104 S.Ct. at 1196. The breach relates back to the day before the petition was filed. 11 U.S.C. section 365(g); *Bildisco*, 465 U.S. at 530, 104 S.Ct. at 1198. Upon presentation of a proof of claim, the injured party may seek recovery for its damages and the claim is administered as part of the routine administration of the estate. *Bildisco*, 465 U.S. at 530, 104 S.Ct. at 1198. Thus, Congress has implemented a procedure that balances the needs of the debtor to rehabilitate with the creditors' entitlement to payment of their claims.

### ESTIMATION

There is a scarcity of case law on the subject of actual estimation of a claim re-

---

**1.** The court is also aware of the opinion of Chief Judge R.F. Wheless, Jr. in this district, *In re Coral Petroleum, Inc.*, 60 B.R. 377 (Bankr.S.D. Tex.1986), in which the court disagreed with *In re Amarex, Inc.*, 61 B.R. 301 (Bankr.W.D.Okla. 1985). This situation is just the opposite of the facts that were before Chief Judge Wheless. Whereas in *Coral Petroleum*, the claims were preference claims and, if allowed, would have "frustrate[d] the purpose of the voting require-

ments in the Code, which is to protect the rights of legitimate creditors to determine the outcome of the plan," 60 B.R. at 383, in the pending TransAmerican matter, it would frustrate the purpose of the Code to postpone confirmation pending the outcome of claims litigation with ordinary trade and utility claimants. *See, e.g., In re Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir.1985); *In re Continental Airlines Corp.*, 60 B.R. 903 (Bankr.S.D.Tex.1986).

sulting from rejection of an executory contract under section 365. This court will attempt to apply basic principles of claim estimation in the temporary liquidation of the LP & L claim.

LP & L claims $38,271,067.65 as damages from the breach of its executory contract with GHR. LP & L arrived at that figure by computing damages according to the liquidated damages clause in the rejected executory contract. That clause allowed LP & L to collect the "minumum [monthly] demand charges" for the life of the contract, 120 months.

TransAmerican estimates the LP & L claim at zero. TransAmerican maintains that even though the executory contract contained a liquidated damages clause, when the contract was rejected, the liquidated damages clause was rejected as well, on the principle that an executory contract may be assumed only in whole and not in part,[2] and that that principle is applied to rejection. *See In re The Texstone Venture, Ltd.*, 54 B.R. 54 (Bankr.E.D.Pa.1983).

This court is not bound by the terms of the liquidated damages clause. The executory contract as a whole was rejected and with it, the debtor rejected its obligation under a liquidated damages clause. In any case, this court emphasizes that today's decision does not bind the parties forever; it is a temporary allowance so as not to obstruct the path of the parties to work toward confirmation of a feasible plan of reorganization.

■ On the issue of rejection in whole, this court adopts the existing rule that the rejection of an executory contract is a rejection in its entirety. While Congress has the power to permit partial rejection of executory contracts it has not done so. 11 U.S.C. section 365(a). Section 365, which allows rejection, was meant to aid reorganization by relieving the debtor of burdensome contracts in the exercise of its business judgment. As the Supreme Court has articulated, "the authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, be-

cause rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." *Bildisco*, 465 U.S. at 528, 104 S.Ct. at 1197. Support for rejection in full may be found in *In re The Texstone Venture, Ltd.*, 54 B.R. 54 (Bankr.S.D.Tex.1985), *In re Silver*, 26 B.R. 526 (Bankr.E.D.Pa.1983) and also in *In re Allain*, 59 B.R. 107 (Bankr.W.D. La.1986). This court notes from its own search of authorities, the scarcity of legal authority on this point, and it notes the failure of counsel for LP & L to apprise the court of cases to the contrary in the context of bankruptcy. Counsel for LP & L stated on the record that the authorities they submitted would not support a finding in the context of rejection of an executory contract in bankruptcy.

■ It is also important to note the circular argument involved. If an executory contract is rejected, its damages clause is also rejected. However, damages clauses come into play only upon the breach. To enforce the liquidated damages clause of a duly rejected executory contract would in effect enforce the executory contract. Rather than succumb to this cycle, this court adopts the principle of law as articulated in the cases cited and recognizes that the full executory contract is rejected.

LP & L asserts its $38,271,067.65 claim on what is called the LIPS–9 rate schedule established by the Louisiana Public Service Commission in effect at the time of the contract. These are the rates that LP & L may charge its large industrial power customers and takes into account LP & L's fixed costs and its variable costs.

This court applies an objective approach to valuing LP & L's claim for damages, an approach employed in bankruptcy, and one that applies the goals of the Bankruptcy Code. *In re O.P.M. Leasing Services, Inc.* 56 B.R. 678, 684–85 (Bankr.S.D.N.Y.1986). *See In re Yost*, 54 B.R. 818 (Bankr.W.D. Ky.1985). LP & L will be allowed a temporary claim, only for voting purposes, of its provable damages.

---

**2.** *See, e.g., Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir.1985);

*Tonry v. Herbert (In re Tonry)*, 724 F.2d 467, 469 (5th Cir.1984).

This court is aware of only one case on this point. Bankruptcy Judge Duberstein in *In re Davies*, 27 B.R. 898 (Bankr.E.D.N. Y.1983), found a liquidated damages clause a penalty and ruled that actual damages were due the creditor from the debtor's breach of their contract. No computation of actual damages was given at the time. Because of the emergency nature of the matter before this court and because testimony and argument were heard, this court stands in a position to rule also on the computations of damages.[3]

Mr. Walter E. Bond, as an LP & L Industrial Marketing Manager charged with a liasonship between LP & L and its large industrial customers, one of which was TransAmerican, testified at the August 10, 1987 hearing. He testified that certain rate schedules, determined by the Louisiana Public Service Commission, were in effect at the time the TransAmerican contract went into effect and that since that time, the rates have changed a number of times. The rate schedule provides for the utility's recovery of fixed and variable costs in generation and transmission of service. Mr. Bond testified that the contract was entered into on June 24, 1981, under the effective rate schedule, LIPS-9. Subsequent to that time rates rose and in March, 1984, LIPS-10 went into effect, followed by LIPS-11 and LIPS-12. Rates declined, however, upon the effectiveness of LIPS-13. Thus, LP & L's fixed and variable costs were passed to its other customers.

This court understands from this evidence that certain damages accrued from TransAmerican's breach of its contract with LP & L. Rates rose in order to absorb the loss and were charged to LP & L's other customers. Once the rates again declined, it appears the loss had been absorbed.

Mr. Bond testified that in order to arrive at its $38 million claim, LP & L computed TransAmerican's monthly minimum charge, governed by contract, and multiplied that by the 120 months of the contract between June 24, 1981 and June 26, 1991. No present worth was established. LP & L did not take into account that it is currently negotiating with TransAmerican for supply under a new contract.

■ Although the liquidated damages clause of a rejected executory contract is not enforceable, it does provide some guidance as to the intention of these parties at the time of their contract. That such a clause was incorporated into their contract infers that the debtor and LP & L must have taken into account recovery by LP & L of some of its economic damages in the event that the debtor failed to perform its commitment. Therefore, this court has taken into account the minimum demand charges for the time period that LIPS-9 was in effect, the subsequent rate schedule increases to other utility customers after the debtor's rejection and all other evidence admitted at the hearing.

## CONCLUSION

LP & L's estimated claim for damages from rejection of the contract under section 365 of the Bankruptcy Code is $10,569,-105.74. Therefore, this court orders that only for voting purposes, temporary estimation of LP & L's claim is made at $10,-569,105.74. Substantive litigation may ensue between TransAmerican and LP & L or the parties may later arrive at an understanding. This court does not impose its opinion on this matter on any future proceeding relative to these parties and claims. In order to save the 1200 parties involved in this case the expense and delay of waiting until all the claims are fixed on the merits, and to comply with governing law, this court makes this order today to enable consideration of the debtor's plan. Deadlines have been extended in separate orders allowing LP & L to file a late ballot and objection to the plan if it so desires. With

---

**3.** *In re Davies* was a Chapter 7 case, it involved a different kind of contract, there were no impending, emergency consequences to refusing to liquidate a claim, and the amount of money involved did not approach the situation *sub judi-*

*ce.* However, the case is authoritative on its holding on the matter of the liquidated damages clause in the context of rejection of contracts in bankruptcy. This court adopts *In re Davies* for these principles.

this claim temporarily fixed, the court may proceed to matters of administration of the estate that impact many more parties than this one claimant.