In re HAMILTON ROE
INTERNATIONAL,
INC., Debtor.

DSR, INC., Plaintiff,

v.

Valerie Hall MANUEL, Trustee for Estate of Hamilton Roe International, Inc., Defendant.

Bankruptcy No. 92–01123–3F7.
Adv. No. 93–432.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Dec. 23, 1993.

Janet H. Thurston, Jacksonville, FL, for plaintiff.

Ronald Bergwerk, Jacksonville, FL, for defendant.

### ORDER DENYING PLAINTIFF'S MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION

JERRY A. FUNK, Bankruptcy Judge.

This proceeding is before the Court on Plaintiff's Motion for a Preliminary Injunction (Doc. No. 2) filed on December 1, 1993. On December 6, 1993, the Court conducted a hearing on Plaintiff's Motion, and pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court made oral findings of fact and law and denied the motion. This order memorializes the Court's oral findings. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, and 11 U.S.C. § 105.

### A. PROCEDURAL BACKGROUND

Debtor, Hamilton Rowe International, Inc., filed on February 28, 1992, a Voluntary Petition for Relief under Chapter 11. Hamilton's creditor, QRS, Inc., filed a Motion to Fix Time for Debtor to Assume or Reject Executory Contract (Doc. No. 16), and on March 27, 1992, the Court entered an order (Doc. No. 21) requiring Debtor to assume or reject

the executory contract within 60 days. Then, on May 26, 1992, Debtor–in–Possession filed a Motion for Reconsideration of the Court's Order (Doc. No. 29). The Court scheduled a hearing on August 20, 1992, to consider Debtor's Motion, which was withdrawn by Debtor's attorney during the hearing.

On June 21, 1993, the Trustee filed a Motion to Convert the Case to Chapter 7 or Dismiss the Bankruptcy Case (Doc. No. 70), which conversion the Court approved and a notice was sent to creditors on September 24, 1993. On November 5, 1993, the Trustee filed a Notice of Sale (Doc. No. 103) which declared that "copies of Q.R.S. object and source code" will be sold "free and clear of all liens and interests." Plaintiff opposed this sale and filed the instant motion seeking a preliminary injunction and order prohibiting the Trustee from selling the software on December 7, 1993, at 11:00 A.M.

## B. FACTS

On December 28, 1990, QRS, Inc.'s (hereinafter "QRS") former shareholders entered into a stock purchase agreement (hereinafter "the agreement") with Hamilton Roe International, Inc., (hereinafter "Hamilton"), in which QRS sold to Hamilton its stock and Q.R.S. software; this software interprets and footnotes medical diagnostic reports and determines a set of diagnoses expressed in the form of ICD codes. Q.R.S. software is a trade secret belonging to QRS (and subsequently assigned to Darthy, Inc.).

Although certain obligations of the agreement are disputed by the parties, the agreement essentially required Hamilton to pay $220,000.00 at closing and to execute a promissory note for the remaining balance of $220,000.00. Upon payment of the deposit at closing, QRS transferred both its stock and software to Hamilton. Further, the agreement provided that QRS would retain a copy of the software and its component parts, but QRS agreed not to use or divulge the contents of the software and its component parts or to compete with Hamilton for three years from the date of closing.

In September 1992, (after Hamilton's attorney withdrew the Motion to Reconsider the Court's Order Requiring Debtor to Assume or Reject), QRS executed a second agreement with Darthy, Inc. For the sum of $40,000.00, QRS's former shareholders assigned their rights, title and interest under the stock purchase agreement to Darthy, Inc., a company owned by Darthy S. Roe. In addition to owning Darthy, Inc., Roe is also Hamilton's past president and majority stockholder. In July 1993, Darthy, Inc., subsequently assigned its interest in the stock purchase agreement to DSR, Inc., (a company for which Roe is president, secretary, and shareholder) for $100.00.

The stock purchase agreement contains a damage provision which provides that in the event of default by Hamilton, the following events were to occur:

A. The former shareholders would be released from their confidentiality and non-compete agreements, and could immediately utilize their duplicate copy of the System and all of its component parts;

B. Hamilton would immediately cease using the System and its tangible and intangible derivative products;

C. Hamilton would immediately return to the former shareholders, the System and all components, including derivative products; and

D. Hamilton would not compete with the former shareholders for a period of three (3) years from the date of default.

Plaintiff contends that Hamilton defaulted on the agreement and promissory note by failing to make payments due on June 28, 1992, and December 28, 1992. Upon default by Hamilton, Plaintiff argues that Plaintiff—the assignee of the Seller's rights and remedies under the contract—is entitled to enforce the contract's remedies. Further, Plaintiff contends that enforcement of the contractual remedies requires an order: (1) enjoining the Trustee from selling Plaintiff's property; and (2) requiring Hamilton to return the Q.R.S. software and its components to Plaintiff. For the reasons that follow, the Court disagrees and finds that the Trustee may proceed with the sale of Hamilton's software.

## C. PRELIMINARY INJUNCTION

■ A preliminary injunction is proper when a movant satisfies four essential elements: (1) the Plaintiff demonstrates a substantial likelihood that it will prevail on the merits; (2) there exists a substantial threat that the Plaintiff will suffer irreparable injury; (3) the threatened injury to the Plaintiff must outweigh the harm the injunction would cause to the Defendant; and (4) the injunction must serve the public interest. *In re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir.1985); *accord Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1355 (11th Cir.1982).

It is important to note that the Court's findings are not dispositive of the case. At this point, the Court considers only whether Plaintiff has demonstrated a substantial likelihood of succeeding on the merits (as well as the remaining factors) sufficient to issue an injunction. The Court does not actually decide the merits of Plaintiff's case. The merits will be resolved after trial.

### 1. SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

#### a. THE CONTRACT IS NONEXECUTORY

■ In order to succeed on the merits, Plaintiff bears the burden of proof and must demonstrate a substantial likelihood of succeeding on its claim that the stock purchase agreement is executory, and therefore, subject to 11 U.S.C. § 365.

The Bankruptcy Code requires a trustee, subject to the Court's approval, to assume or reject any executory contract or unexpired lease of real property or of personal property of the debtor. If a debtor defaults, a trustee may assume the contract by either curing the breach or providing adequate assurance in the form of payment or future performance. If a trustee does not either assume or reject the contract within 60 days after being so ordered by the Court, then such contract is deemed rejected. 11 U.S.C. § 365(d)(1). Rejection of an executory contract by a trustee constitutes a breach, entitling the nonbreaching party to damages. 11 U.S.C. § 365(g).

■ Although the case law has been unable to precisely define the term "executory," the legislative history "includes contracts on which performance remains due to some extent on both sides." H.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 347, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, 6303. *Accord In re Cherry*, 78 B.R. 65, 68 (E.D.Pa.1987); *In re Cooper*, 47 B.R. 842, 844 (W.D.Mo.1985); *In re Lubrizol*, 756 F.2d 1043, 1045 (4th Cir.1985), *cert. denied*, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). *See generally* Countryman, *Executory Contracts in Bankruptcy*, Part I, 57 Minn. L.Rev. 439, 460 (1973). In addition, an executory promise includes "one in which a party binds himself to do or not do a particular thing. . . ." *In re Constant Care Community Health Care Center, Inc.*, 99 B.R. 697 (W.D.Tenn.1980).

Before analyzing the covenants at issue and contained in the stock purchase agreement, it is important to summarize the agreement's major sections and their respective purposes. QRS and Hamilton entered into a contract for the sale (not a lease or a license) of its stock and software known as Q.R.S. At closing, QRS agreed to deliver the following: (1) all shares of stock; (2) written resignations of such directors and offices as Purchaser may request; (3) Certificates of Incorporation or Charters, bylaws, minute book, stock certificate book, corporate seal, books of accounts, bank accounts, and records, and other existing documents of QRS, and (4) other documents required by the agreement. Hamilton agreed to pay half the purchase price at closing and execute a promissory note for the remainder due ($220,000.00). At the conclusion of this transaction, Hamilton purchased the Q.R.S. software and QRS became a general unsecured creditor.

The problem created by this contract is made clear in the introductory sentence of Section 10.01. That section begins as follows: "In order to *secure* the payment of the Note mentioned above in Section 2.02, upon default in payment of the Note, Sellers shall have the following remedies. . . ." Agreement at 9. Although the contract refers to the remedies as security, QRS did not per-

fect a valid security interest in the software. During the hearing, Plaintiff's counsel conceded that point. Plaintiff could have established a "source code escrow," which method has become common in sales and financing transactions within the computer industry, but QRS chose instead to remain an unsecured creditor in the event of default. *See* Gilburne, *The Use of Source Code Escrows and Technical Design,* Vol. 1 The Computer Lawyer No. 4, 3 (May 1984); Rosenblum, *Software Escrows: Legal Concerns,* 29 Boston Bar Journal 22, 25 (November 1985).

Instead of creating and perfecting a security interest, QRS resorted to a hybrid alternative. In Section 10(b) of the agreement, QRS retained a copy of the source code on disk which could be utilized if Hamilton defaulted. Although QRS retained a copy of the software, its retention of the software was subject to the agreement's confidentiality and noncompete provisions. As long as QRS held a copy of the software, it agreed not to compete or divulge the source code, provided Hamilton made all scheduled payments. Upon Hamilton making payment in full, QRS agreed to return its copy of the software, and not compete until three years from the date of closing. On the other hand, if Hamilton defaulted on a payment, Plaintiff could immediately utilize the software and compete.

Plaintiff relies on two covenants—a mutual covenant of confidentiality and a seller's covenant not to compete—as proof that the contract is indeed executory. Plaintiff contends that the noncompete provision applies equally to both parties, making the contract executory for that reason alone. According to Plaintiff's understanding of the agreement, the noncompete provision applies equally to Hamilton since in the event of Hamilton's *default,* Hamilton's obligation to refrain from competition with QRS then arises.

 Generally, a contingent obligation is sufficient to render a contract executory. *Lubrizol,* 756 F.2d at 1046. "Until the time has expired during which an event triggering a contingent duty may occur, the contingent obligation represents a continuing duty to stand ready to perform if the contingency occurs." *Id.* The noncompete provision, by its own terms, applies to the Seller. Unlike an ordinary contingency, the Purchaser's promise not to compete does not arise until the Purchaser breaches the agreement by failing to make payment. By itself, then, Purchaser's promise not to compete is not a contingent obligation, in the usual sense; it is a remedial obligation.

The significance of this contractual remedy cannot be overstated. Although the contractual remedies appear to be ordinary promises, they are not necessary for the performance of this contract. Instead, the promises in this agreement, which Plaintiff claims are ordinary, contingent promises, are remedial and operate as both a forfeiture and a penalty. This remedial provision disguises a promise as a *security interest* without complying with the Uniform Commercial Code's requirements for creating such an interest. The effect of the promise operates as a forfeiture because it severs Hamilton's property interest.

The alleged contingent promise also serves as a penalty. Upon the Purchaser's default, section 10(c) states that the Purchaser shall not compete "whether or not Purchaser or others use any confidential information restricted under this agreement." Because a purchaser may argue that it is unfairly prevented from competing based on non-confidential information, this provision prohibits *all* competition by a defaulting purchaser. This provision seeks to eliminate the Seller's burden of determining how a purchaser developed a rival system after defaulting under the contract. Clearly, the Purchaser is penalized for defaulting on its obligation to pay. During trial, the Court could find the non-competition clause to be a penalty and therefore unenforceable. Moreover, even if Plaintiff could demonstrate a substantial likelihood of prevailing on the merits that a contingent remedial promise transforms the agreement into an executory contract, which the Court concludes Plaintiff cannot, these provisions may be, nonetheless, unenforceable.

Beyond these problems, there is an additional concern which is the primary reason for this litigation: Plaintiff is concerned with thwarting a subsequent purchaser from obtaining the software and then competing with

Plaintiff. Once the software is sold at sale, Plaintiff realizes the difficulty of enforcing a noncompete provision against a third party lacking any contractual privity. Because of this lack of privity, Plaintiff seeks to prevent the sale; and by obtaining an injunction, prevent others from acquiring the software and competing against DSR, Inc.

■ Yet Plaintiff's position is similarly impaired against the Trustee. When a bankruptcy petition is filed, an estate is created which is comprised of all case property of the debtor, regardless of their location. 11 U.S.C. § 541. The Trustee has all the rights and powers of a debtor. 11 U.S.C. § 544. More importantly, any liens that are not perfected on the date of the petition against a bona fide purchaser for value are voidable. 11 U.S.C. § 545. The law treats the Trustee as a hypothetical lien creditor, and as such, the *unperfected contractual security interest* does not apply as to the Trustee. *See* 11 U.S.C. § 544(a). When this case was converted and a Chapter 7 trustee appointed, Plaintiff's alleged lien, which was not perfected, became unenforceable against the Trustee.

The reason for treating a secured creditor differently stems from the legal effect of the security agreement. A perfected security interest is a present interest in certain property, establishing the holder's priority over any other claimant—including a purchaser (or a Trustee). That priority is not dependent on the performance of the contract. Here, Plaintiff did not perfect a security agreement, but included certain language within a contract that purports to create a security interest. If the Court were to accept this argument, any unsecured creditor could request specific performance of an obligation, and in effect, create a security interest.[1] Damages must receive the priority provided general unsecured creditors as stated in the Bankruptcy Code.

Although prohibiting competition is of concern to Plaintiff's business, it is not relevant to the Court in determining Plaintiff's present interest in the software. The noncompete provision contained in section 6.04, if it is a material obligation at all, applies only to the Seller. *In re Noco*, 76 B.R. 839 (N.D.Fla.1987) (holding that a franchise agreement's noncompete clause was no longer executory where franchisee had breached the contract and obtained the benefits available). The Court does not construe the noncompete provision to be executory; that is, requiring performance by both parties. Without a perfected security interest in the software, Plaintiff lacks a legal basis for its return. Moreover, Hamilton has reaped the benefits of the three year noncompetition clause which expired in December 1993.

Additionally, Plaintiff argues that the contract is executory because of the mutual obligation to maintain confidentiality. The confidentiality provision is stated generally and applies to the buyer's and seller's "consultants, attorneys, accountants, employees and representatives." The purpose of this provision is to prohibit any person with confidential information from divulging "any and all commercial, financial, technical or other information regarding QRS, Sellers and the Purchaser." In a general sense, this provision appears to apply equally to both parties. However, the material aspects of this obligation must be construed *jointly* with the noncompete provision. *See* 10.03(b).

In this regard, the confidentiality provision applies solely to the Seller. It could hardly apply to Hamilton who not only purchased the present right to its use, as in the case of a license, but also the ownership of the software itself; Hamilton owns the Q.R.S. source code. The Purchaser would be foolish and gain little by divulging confidential informa-

---

**1.** Herein lies the problem with Plaintiff's request for enforcement of the damage clause through issuance of an injunction, regardless of whether the contract is determined to be executory and rejected or nonexecutory. The Bankruptcy Code in Section 502(c) requires the estimation of any claim for which an equitable remedy is sought, such as specific performance. As the legislative history demonstrates, all claims against a debtor must be converted into dollar amounts. Thus,

Plaintiff may claim damages as an unsecured creditor. *See In re King*, 102 B.R. 184, 187 (D.Neb.1989). *Cf. NLRB v. Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) (stating that once the Debtor–in–Possession rejected an executory collective bargaining agreement, the Board may not seek enforcement in bankruptcy requiring debtor to make pension, health, and welfare contributions and to remit union dues).

tion to third parties. If Hamilton were to share such information with others, Hamilton would compromise its own business. However, Hamilton could communicate the software's contents to others as part of its ownership rights and as necessary to compete in the industry. Otherwise, Hamilton's ownership rights would be limited as would its ability to further develop the software and make improvements.

If the confidentiality provision applies to the Purchaser at all, it arises as a remedial obligation. This provision alone, then, does not change an otherwise fully performed contract into an executory contract. Moreover, this confidentiality provision lacks any numerically fixed duration, and for that reason alone may be unreasonable and unenforceable.

## b. REJECTION

Plaintiff asserts that upon the Court ordering Hamilton to assume or reject the agreement within 60 days, and because the Trustee did not assume the agreement, the contract is deemed rejected as a matter of law. Once rejected, Plaintiff claims the contract's damage provisions are enforceable, and according to Plaintiff, those provisions mandate the return of the software. Even if the Court were to agree with Plaintiff and find that the contract is executory, Plaintiff would still not prevail.

As one court has stated, "[t]he authority to reject certain contracts is fundamental to the bankruptcy system and provides a mechanism through which severe financial burdens may be lifted while the debtor attempts reorganization." *In re Sun City Investments, Inc.,* 89 B.R. 245 (M.D.Fla. 1988). If a contract is executory, it may be assumed only in whole and not in part, and that principle applies to rejection. *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 (5th Cir.1985). Thus, when a debtor rejects an executory contract, a debtor rejects the contract in its entirety. *In re TransAmerican Natural Gas Corp.,* 79 B.R. 663 (S.D.Tex.1987). As a result, the contractual remedies contained in a damage provision are similarly unenforceable.

The rationale for this result becomes clear when one considers the circuitousness of Plaintiff's argument. As one court has stated:

> If an executory contract is rejected, its damages clause is also rejected. However, damage clauses come into play only upon the breach. To enforce the liquidated damages clause of a duly rejected executory contract would in effect enforce the executory contract.

*Id.* at 667. Although some courts have held to the contrary, this Court rejects those cases. *See In re Independent American Real Estate, Inc.,* 146 B.R. 546 (N.D.Tex. 1992).

Applying these principles to the case at bar, the Court finds that Plaintiff is unable to enforce the agreement's damage provision. If the contract is executory and deemed rejected, the entire contract is repudiated, including the damage clause. Because Plaintiff's basis for the return of the Q.R.S. software depends solely on the damage clause, which this Court finds is rendered unenforceable upon rejection, Plaintiff lacks any legal basis for this Court to order the Trustee to return it.[2]

## 2. SUBSTANTIAL THREAT OF IRREPARABLE INJURY

The second element that must be satisfied is a substantial threat that Plaintiff will suffer irreparable injury. Plaintiff alleges that by selling the software, a buyer will examine the program's source code, and compete against Plaintiff which would result in irreparable injury. Although Plaintiff may be harmed, the harm is minimal. Plaintiff conceded during the hearing that it does not have a perfected security interest in the software. As such, Plaintiff stands in the position of any other general and unsecured creditor, and lacks any basis for enforcing the noncompetition provision contained in the damage clause against the Trustee—a bona fide purchaser for value. QRS could have perfected such an interest, and by doing so, prevented the Trustee from selling the software. Yet Plaintiff's officers knew this when

---

2. *See infra* note 1 and text accompanying note.

purchasing the promissory note and agreement from QRS.

### 3. BALANCING OF INTERESTS

In this proceeding, there are two rival interests at stake. Defendant has an interest in preserving the value of a rapidly declining asset—a computer software program. Plaintiff has an interest in protecting the software's confidentiality, but such an interest is minimal on the facts presented in this case. Plaintiff's interest is minimal because QRS sold the software to Hamilton, and failed to perfect a security interest. Once Hamilton filed bankruptcy, Plaintiff's interest in the software diminished. As discussed *infra*, Plaintiff is a general unsecured creditor, which lacks a present interest in the software. If such were at issue in this case—whether there was a security interest—Plaintiff would be correct that selling the software would result in irreparable harm if the software were sold and then the Court determined during trial that Plaintiff had a security interest. Yet this issue is not before the Court.

After weighing these interests, it is clear that the threatened injury to Defendant outweighs the benefit of granting an injunction.

### 4. PUBLIC INTEREST

The last element that must be satisfied is that the public interest must not be disserved. Here, the public interest is served by denying the injunction. In an ordinary Chapter 7 case (liquidation), if a contract is determined to be nonexecutory, and assuming the asset is not properly secured, a trustee may sell the asset to pay creditors. Here, the Trustee has an asset that may be sold for more than $300,000.00. Darthy S. Roe, who happens to be a shareholder in both the Plaintiff's corporation and the Debtor's corporation, seeks an injunction—not to protect the value of the software which she already owns and possesses, but to preclude those who may purchase the software from competing until her company can successfully market the software.

As a result of Hamilton's breach, Plaintiff can sell the software and compete; the Company is not precluded from doing so. Also, Plaintiff may claim damages from Hamilton for breach of the agreement, although there is no guarantee of recovery. Plaintiff as an unsecured creditor is not, however, entitled to enforce a remedial provision against the Trustee, who is a subsequent purchaser for value, and to have the software returned.

In addition, if the contract were executory as Plaintiff argues, the Bankruptcy Code allows a debtor or trustee to reject a contract and be free of any existing contractual obligations. Upon rejection, Plaintiff is entitled to ordinary damages as an unsecured creditor. Only if a plaintiff has a perfected security interest can a plaintiff force the return of an asset. Plaintiff lacks such an interest here.

In this liquidation proceeding, the public interest is best served when a debtor files bankruptcy and all available assets are sold to restore creditors as fully as possible. Although the result in this case may appear harsh—this is not a case where an innocent Seller is being damaged by a debtor's breach. Plaintiff's President, Darthy S. Roe, is on both sides of this dispute; she seeks to liquidate one corporation, while protecting her investment through a second corporation, DSR, Inc. The Court understands her position, but the law does not sanction such legal maneuvering.

**DONE AND ENTERED.**