**In re EI INTERNATIONAL, Debtor.**

**Bankruptcy No. 90–00646–11.**

United States Bankruptcy Court, D. Idaho.

Jan. 7, 1991.

Paul R. Ince, Callister, Duncan & Nebeker, Salt Lake City, Utah, for debtor.

Alan E. Barber, Hansen, Beard, Martin, St. Clair, Peterson & Sullivan, Idaho Falls, Idaho, for Ontario Hydro.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

Ontario Hydro, a Canadian corporation and a public utility generates electricity in the Providence of Ontario, Canada. EI International (EI), the reorganized debtor, agreed to supply its PMAX software system to one of Ontario Hydro's plants. After filing a chapter 11 petition the executory contract with Ontario Hydro was rejected by the debtor under 11 U.S.C. § 365. Ontario Hydro has filed a claim against EI in the amount of $3,631,533.00. EI acknowledges Ontario Hydro's claim to the extent of $176,752.00. The difference is in dispute.

The issue has been submitted for resolution on certain non-contested facts, the submission of certain exhibits into the record, and the arguments and briefs of counsel.

In its amended proof of claim, which Ontario Hydro considers an estimate since "... outstanding work and final costs could be higher when the work is finally completed ..." the following claim is specified:

| | | |
|---|---|---:|
| 1. | Hardware | $ 150,000.00 |
| 2. | Corrections for deficiencies and omissions required to make good the delivered software: Performance Associates on PMAX TIW Computers on IMAGE | 1,800,920.00 |
| 3. | Contract overcharge | 27,400.00 |
| 4. | Expenses (additional) | 130,739.00 |
| 5. | Interest costs | 98,711.00 |
| 6. | Loss of Benefits of Profits | 1,423,763.00 |
| | TOTAL | $3,631,533.00 |

The system EI agreed to supply involved mostly computer software customized to the requirements specified by Ontario Hydro. EI has not produced the software sufficient to satisfy its contractual obligations. The proper measure of damages under the agreement constitutes the issue to be resolved. The parties principally dis-

pute the terms of the agreement and the applicable law.

### I.

EI contends the provisions of 11 U.S.C. § 365(n)(2)[1] apply to the rejected agreement. Ontario Hydro contends the extent of its claim should be determined in accordance with the law of the province of Ontario since the contract between the parties contains such a provision. In 1988, 11 U.S.C. § 365 was amended by the addition of Section 365(n) to treat executory contracts involving intellectual property rights.[2] The purpose of the legislation was to afford protection to a licensee of intellectual property in light of *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir.1985).

Stated generally, § 365(n) affords the licensee of an intellectual property an option if the licensor elects to reject the executory contract. The option consists of the licensee choosing either to terminate the agreement or to retain the rights to performance by the other party under the agreement. The election to terminate the agreement is conditional. In order for the licensee to elect to terminate, the previous rejection by the licensor must have constituted a breach of the contract, which breach would have entitled the licensee to treat the contract as terminated either by a contractual provision or as a matter of law.

If the licensee elects to retain its rights under the agreement,[3] the licensee must make all royalty payments and further is deemed to waive any right to setoff and any § 503(b) claim the licensee may have against the bankruptcy estate. Further, if the licensee elects to retain its rights under the agreement, the licensee shall make written demand on the trustee for the intellectual property included in the agreement and notify the trustee not to interfere with the licensee's rights under the agreement.

### II.

■ Ontario Hydro, as the licensee, has not formally elected to either reject the agreement or to accept its benefits. While Ontario Hydro has not made a written election, it has chosen to retain the software. Ontario Hydro contends 11 U.S.C. § 365 is not applicable to the issue, arguing the choice of law provision in the contract standard reserves jurisdiction in Ontario law.

---

**1.** Section 365(n) was enacted by Congress in 1988 (Public Law 100–506, to treat contracts involving licenses to rights in intellectual properties, entitled "An Act to Keep Secure the Rights of Intellectual Property Licensors and Licensees Which Come Under the Protection of Title 11 of the United States Code, The Bankruptcy Code".

**2.** 11 U.S.C. § 365(n)(1) states:

If the trustee rejects an executory contract under which the debtor is a licensor of a right to intellectual property, the licensee under such contract may elect—

(A) to treat such contract as terminated by such rejection if such rejection by the trustee amounts to such a breach as would entitle the licensee to treat such contract as terminated by virtue of its own terms, applicable non-bankruptcy law, or an agreement made by the licensee with another entity; or

(B) to retain its rights (including a right to enforce any exclusivity provision of such contract, but excluding any other right under applicable nonbankruptcy law to specific performance of such contract) under such contract and under any agreement supplementary to such contract, to such intellectual property (including any embodiment of such intel-

lectual property to the extent protected by applicable nonbankruptcy law), as such rights existed immediately before the case commenced, for—

(i) the duration of such contract; and

(ii) any period for which such contract may be extended by the licensee as of right under applicable nonbankruptcy law.

**3.** 11 U.S.C. § 365(n)(2) states:

If the licensee elects to retain its rights, as described in paragraph (1)(B) of this subsection, under such contract—

(A) the trustee shall allow the licensee to exercise such rights;

(B) the licensee shall make all royalty payments due under such contract for the duration of such contract and for any period described in paragraph (1)(B) of this subsection for which the licensee extends such contract; and

(C) the licensee shall be deemed to waive—

(i) any right of setoff it may have with respect to such contract under this title or applicable nonbankruptcy law; and

(ii) any claim allowable under section 503(b) of this title arising from the performance of such contract.

In particular, Ontario Hydro asserts the choice of law provision in the standard contract governs the issue of damages. However, the proof and allowance of claims in bankruptcy are in the first instance, matters of federal law.[4] 11 U.S.C. § 365 is indeed applicable to the determination of the allowable amount of Ontario Hydro's claim since EI is a reorganized debtor under chapter 11 in this Court. In the application of federal bankruptcy law, appropriate regard for rights acquired under state or foreign law is proper, if such is necessary to determine the extent of a claim. In the present instance, resort to non-bankruptcy law is not necessary since the extent of the Ontario Hydro claim can be determined under Federal law.

### III.

While the parties conducted their business arrangements through a series of purchase orders, the undisputed facts would indicate the primary contract between the parties consisted of Ontario Hydro's form purchase orders which incorporated a document entitled "Contract Standard" the heading of which reads: "STANDARD COMMERCIAL CONDITIONS FOR PURCHASE OF DATA PROCESSING EQUIPMENT". A further material document is entitled "DISCUSSIONS OF THE COMMERCIAL ISSUES". This latter document is apparently a recapitulation of the modifications contemplated by the parties to the purchase orders and the Contract Standard.

The contract provisions authorize Ontario Hydro "... to treat (the) contract as terminated by virtue of its own terms ..." using the language of the statute.[5] Paragraph 26 of the contract standard permits termination of the agreement in the event of the rejection of the contract by the reorganized debtor. Paragraph 34 is also applicable.[6] Ontario Hydro thus has the right to treat the contract as terminated under Section 365(n)(1)(A). Since Ontario Hydro has not opted to "retain its benefits" under the rejected agreement as allowed by Section 365(n)(1)(B) the extent of its claim will be determined as if the contract had been rejected under Section 365(n)(1)(A). This analysis results in Ontario Hydro's claim receiving the same treatment as any other claim resulting from a rejected executory contract under Section 365.

Ontario Hydro's claim is based on the provisions of Section 26 of the Contract Standard. According to this section upon the commission of certain specified acts by EI, which acts are in the nature of breaches of the agreement, Ontario Hydro may:

i) take possession of all the work in progress, at the installation site, and finish the work by whatever means Ontario Hydro may deem appropriate under the circumstances;

ii) withhold any further payments to the Company until its liability to Ontario Hydro is ascertained.

The Company shall be liable to Ontario Hydro for: (a) the extra expense of finishing the work, including compensation to Ontario Hydro for additional engineering, managerial and administrative services; (b) the cost of correcting defects which shall include: reimbursement at the contract rate for all completed items; reimbursement for the costs to the Company for work in progress and expenses incurred in the course of the work, plus a reasonable return on such costs and expenses, reimbursement for costs and expenses directly caused by the cancellation. Ontario Hydro shall not be liable to the Company for loss of anticipated profit on the cancelled portion or portions of the work. In the event of failure to agree on a settlement, Ontario Hydro shall pay to the Company all agreed amounts and the liability for the balance shall be treated as a claim under the Rights, Claims and Arbitration Clause.

---

4. *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). *In re Holiday Airlines Corp.,* 620 F.2d 731 (9th Cir.1980).

5. 11 U.S.C. § 365(n)(1)(A).

6. 34. Contract Cancellation
Ontario Hydro shall have the right, which may be exercised from time to time, to cancel any uncompleted or unperformed portion of the work or part thereof. In the event of such cancellation, Ontario Hydro and the Company shall negotiate a settlement supported by audit, if required by Ontario Hydro, carried out by auditors acceptable to Ontario Hydro,

(if any) in that portion of the work performed by the Company; and (c) all other loss, damage and expense occasioned Ontario Hydro by reason of the Company's default.

. . . . .

In summarizing its remedies under this clause, Ontario Hydro argues it is entitled to:

1. The extra expense of finishing the work, including costs for additional engineering, managerial and administrative services;

2. The costs of correcting defects in work that EI already performed; and

3. All other loss, damage and expense that Ontario Hydro has suffered because of EI's default.

Ontario Hydro's claim is broken down into the following categories: Additional hardware requirements; Correcting deficiencies in delivered goods; Contract overcharges; Additional Expenses; Interest Costs; and Loss of benefits and profits. EI acknowledges Ontario Hydro has a valid claim of $358,540.00, less certain offsets. EI acknowledges this claim in the following particulars:

| | |
|---|---|
| Hardware | $150,000.00 |
| Software corrections | 35,000.00 |
| Missing Software | 35,000.00 |
| Contract Services | 92,540.00 |
| Expenses | 4,600.00 |
| TOTAL | $317,140.00 |

EI argues it is not responsible for "any indirect, incidental, special or consequential damages" as a result of the modification contained in the "Discussion of the Commercial Issues" documents incorporated into the contract by reference in an amended purchase order. The exclusion of responsibility is an amendment to Section 30 of the Contract Standard. Section 30,[7] so modified, would thus be conflicting with Section 26. However, this problem need not be resolved since Ontario Hydro's claim emanates from a rejected executory contract.

### IV.

The rejection of an executory contract under 11 U.S.C. § 365 rejects the entire contract, including the damage provisions.[8] The enforcement of a liquidated damages clause in a rejected contract under § 365 "... would in effect enforce the executory contract."[9] If liquidated damage clauses were enforceable, there would be no reason for rejection of the contract by a debtor.

"The authority to reject an executory contract is

vital to the basic purpose of a chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."[10]

Ontario Hydro is therefore entitled only to the damages it would have sustained as a pre-petition claim for the breach of the agreement by EI, without regard to the damage clauses contained in the contract.

Ontario Hydro's allowable claim will thus be limited to its actual "out of pocket costs" which it had sustained prior to EI's chapter 11 filing as a result of EI's breach of the agreement. EI has admitted Ontario Hydro has a claim in the amount of

7. 30. Company's Liability

The Company's liability for personal injury (including death) and property damage shall survive acceptance, approval or use of the work, or any part thereof, by Ontario Hydro. The Company shall not be liable to Ontario Hydro for loss of use of the work or of the project in which it is installed or is to be installed, increased cost of operation of the work or of said project, claims by third parties (other than for personal injury for property damage) concerning the operation or non-operation of the work or of said project, which may arise, whether by negligence or otherwise, subsequent to delivery, due to the Company's performance or failure to fully perform under the contract.

8. *In re TransAmerican Natural Gas Corp.,* 79 B.R. 663 (Bankr.S.D.Tex.1987).

9. *In re TransAmerican Natural Gas Corp., supra* at page 667.

10. *National Labor Relations Board v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984).

$358,540.00 but further claims it is entitled to an off-set of $181,788.00 which EI contends is the unpaid balance of the contract. While questioning the right of EI to a set-off, the assertion of such right may have an effect upon the extent of EI's admission of the Ontario Hydro claim. Accordingly, Ontario Hydro will have the option of accepting an allowable claim order in the amount of $176,752.00, or may request a hearing to present further evidence, or argument in support of its claim in accordance with the conclusions of this memorandum of decision. A separate order will be entered.