GIDDINGS V. PETERSON FOOD MART 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 




NO. 3-92-594-CV




GIDDINGS PETROLEUM CORPORATION,



 APPELLANT


vs.





PETERSON FOOD MART, INC., AND MUTSCHER, INCORPORATED,



 APPELLEES



 




FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT



NO. 9222, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING



 




 Giddings Petroleum Corporation ("Giddings") appeals the trial court's rendition
of an adverse summary judgment on its claims against appellees Peterson Food Mart, Inc.
("Peterson") and Mutscher, Incorporated ("Mutscher") for intentionally interfering with its
contractual relations. We will affirm the district court's judgment.



BACKGROUND


 On March 19, 1982, Dodd's Corner, Inc. ("Dodd's") financed its purchase of a gas
station/convenience store business by executing a promissory note and deed of trust on the
property in favor of Lee Savings Association ("Lee Savings"). On July 27, 1982, Dodd's sold
Giddings four gas pumps, four gas tanks, and accompanying equipment, awnings, and canopy
located on this property. By contract, Dodd's gave Giddings the exclusive right to sell gasoline
on the station premises and leased Giddings the portion of the premises where the pumps, tanks,
and canopy were located. The contract does not obligate Giddings to make rental payments. Both parties agreed to various ongoing obligations to one another. For example, Dodd's promised
to supply labor necessary for the sale of gasoline, to offer gasoline for public sale, and to maintain
Giddings's equipment. Giddings promised to purchase gasoline necessary to supply the premises,
to pay Dodd's a monthly sum of at least two cents per gallon, and to indemnify Dodd's from
liability for damages caused by Giddings or its agents. Lee Savings, meanwhile, agreed to
subordinate its lien on the property. This agreement provided:



[Lee Savings] has agreed to the terms of [the Giddings-Dodd's contract], and does
hereby agree that any lien or liens held by it shall henceforth be and are
subordinate to and inferior to [the contract] and, in the event of default as to any
obligation secured by the liens which it holds, GIDDINGS PETROLEUM
CORPORATION, shall have all of the rights and privileges in and to the premises
and as described in [the contract] which the undersigned has approved.



 On October 9, 1987, Dodd's filed a bankruptcy petition. The trustee in bankruptcy
did not assume the Giddings contract within sixty days. (1) On January 19, 1988, the bankruptcy
court lifted the automatic stay (2) with respect to the gas station property, allowing Lee Savings to
foreclose upon the property due to Dodd's' failure to make payments upon the promissory note. 
Lee Savings foreclosed its deed of trust and conveyed the property to Peterson. Peterson then
contracted with Mutscher to supply gasoline to the business located on this property.

 Giddings brought this action against Peterson and Mutscher alleging they had
intentionally interfered with the Giddings-Dodd's contract by their new gasoline-supply contract. (3) 
Giddings claimed its exclusive right to furnish gasoline survived the bankruptcy proceeding and
bound Peterson as a successor-in-interest to Lee Savings. Peterson and Mutscher moved for
summary judgment on several grounds. Without stating a specific basis, the trial court granted
this motion and rendered judgment in favor of Peterson and Mutscher that Giddings take nothing
on its claims. On appeal, Giddings brings one point of error complaining generally that the trial
court erred in granting summary judgment.



DISCUSSION 


 Appellees' motion for summary judgment asserted five bases upon which the trial
court could have rendered its judgment. They allege that the bankruptcy proceeding terminated
the Giddings-Dodd's gasoline supply contract as a matter of law. Appellees further contend that
the "lease" provision in the contract did not create a true leasehold estate and that the contract as
a whole was merely an exclusive licensing agreement, in the nature of an executory contract. The
parties argue these two contentions together. The other grounds for summary judgment allege
antitrust violations, illegal restraint on alienation of real property, and the impossibility of
Peterson interfering with its own contract.

 A defendant is entitled to summary judgment if it presents evidence showing that
at least one element of the plaintiff's cause of action has been established conclusively against the
plaintiff. Gray v. Bertrand, 723 S.W.2d 957, 958 (Tex. 1987); Gibbs v. General Motors Corp.,
450 S.W.2d 827, 828 (Tex. 1970). Summary judgment is proper where, as a matter of law, the
plaintiff cannot succeed upon the theory pleaded. Delgado v. Burns, 656 S.W.2d 428, 429 (Tex.
1983); Gibbs, 450 S.W.2d at 828.

 The elements of a cause of action for tortious interference with contractual relations
are (1) there is a contract subject to interference; (2) the act of interference was willful and
intentional; (3) such intentional act was a proximate cause of the plaintiff's damage; and (4) actual
damage or loss occurred. Victoria Bank Trust Co. v. Brady, 811 S.W.2d 931, 939 (Tex. 1991);
Juliette Fowler Homes, Inc., v. Welsh Assocs., Inc., 793 S.W.2d 660, 664 (Tex. 1990). 
Appellees' motion for summary judgment alleged that the bankruptcy proceeding terminated the
contract, thus negating the first element of Giddings's cause of action as a matter of law. 

 Federal law provides that the trustee in bankruptcy may assume or reject any
executory contract or unexpired lease of the debtor. 11 U.S.C.A. § 365(a) (West 1993). If the
trustee does not assume or reject an executory contract or an unexpired lease of residential real
property within sixty days after the debtor files a petition in bankruptcy, the contract or lease is
deemed rejected. 11 U.S.C.A. § 365(d)(1) (West 1993). Appellees contend that the Giddings-Dodd's agreement was an executory contract, that it was automatically rejected by the trustee's
failure to assume it within sixty days, and that therefore it terminated effective October 9, 1987,
the date of the filing of the bankruptcy petition. Giddings argues that the contract was actually
a commercial lease agreement that was not rejected. It further contends that, regardless of the
nature of the agreement, rejection by the trustee did not terminate the agreement.



Rejection

 Both parties agree that if the Giddings-Dodd's gasoline-supply agreement was an
executory contract, the trustee's failure to assume it within sixty days acted as a deemed rejection
of the contract. 11 U.S.C.A. § 365(d)(1). Giddings asserts that the contract provision "leasing"
the premises where the tanks, pumps, and canopy were located transformed the entire contract into
a nonresidential lease agreement. As a result, the trustee's failure to assume the "lease" would
not act as a deemed rejection because the statute applies only to residential property leases. Id.

 The term "executory contract" is not defined in the federal statute. One
commentator has suggested that a contract is executory where obligations of both parties remain
so far unperformed that failure of either party to complete performance constitutes a material
breach excusing the other's performance. Vern Countryman, Executory Contracts in Bankruptcy:
Part I, 57 Minn. L. Rev. 439, 460 (1973). The United States Supreme Court has similarly stated
that Congress intended a contract to be executory when to some extent performance by both sides
remains due. National Labor Relations Bd. v. Bildisco & Bildisco, 465 U.S. 513, 522 n.6 (1984).

 The Giddings-Dodd's contract contained numerous obligations of both parties that
were not fully performed when Dodd's filed its petition for bankruptcy. Appellees enumerate nine
obligations owed by Dodd's and four by Giddings, a fact undisputed by Giddings. Performance
was clearly still due "to some extent" by both parties as of October 9, 1987. Giddings's exclusive
license to sell gasoline on the station premises, by itself, might not be an "obligation." However,
when determining if a contract as a whole is executory, courts should not consider separately the
component parts of an integrated agreement. In re Audra-John Corp., 140 B.R. 752, 757 (Bankr.
D. Minn. 1992). The exclusive license to sell gasoline is necessarily related to the contract
provisions involving the supply of gasoline and the maintenance of the station premises. See
Lubrizol Enters. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1045 (4th Cir. 1985), cert.
denied, 475 U.S. 1057-58 (1986) (technology licensing agreement was executory contract because
party had obligation to protect license from interference); In re Sun Ray Bakery, Inc., 5 B.R. 670,
672 (Bankr. D. Mass. 1980) (even though party had made full payment for exclusive bakery
franchise, contract was executory when other contractual obligations were unperformed). Further,
when the trustee rejects part of an executory contract, the entire contract is rejected. E.g., In re
Audra John Corp, 140 B.R. at 757; In re El Int'l, 123 B.R. 64, 68 (Bankr. D. Idaho 1991); In
re Transamerican Natural Gas Corp., 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987). The trustee
rejected all of Dodd's' contractual obligations by failing to assume them within sixty days of the
filing of Dodd's' petition and thus also rejected the exclusive licensing provision.

 We reject Giddings's contention that the entire gas supply contract is actually a
lease agreement because one provision purports to lease Giddings the premises around the pumps,
tanks, and canopy. The agreement as a whole is primarily concerned with an ongoing business
relationship. The agreement contains no further terms relating to a commercial "lease" and does
not even require that Giddings make lease payments. Even assuming that this provision creates
a commercial lease, we hold that it is a severable agreement from the remainder of the gas supply
contract. A trustee may reject an executory contract when it is severable from a series of
agreements in a single transaction. In re Cutters, 104 B.R. 886, 889 (Bankr. M.D. Tenn. 1989). 
Giddings does not suggest why, under the terms of the agreement, continuation of the lease
provision mandates that all other contractual obligations, rights, and duties survive bankruptcy.

 We hold that the gas supply agreement, including the exclusive gasoline license,
was an executory contract that the trustee rejected by failing to assume it within sixty days of the
commencement of the bankruptcy proceedings. 11 U.S.C.A. § 365(d)(1). (4)



Effect of Rejection

 If the trustee rejects an executory contract, such a rejection constitutes a breach of
contract that relates back to the moment immediately before the date that the bankruptcy petition
was filed. 11 U.S.C.A. § 365(g)(1) (West 1993); Bildisco, 465 U.S. at 530. Claims for such a
breach must be presented through the normal bankruptcy procedures for classifying and satisfying
liabilities. Bildisco, 465 U.S. at 530. As Giddings did not recover any damages for breach of
contract, we must decide the effect of the trustee's rejection of the gas supply contract. (5)

 The weight of federal authority holds that the trustee's rejection of an executory
contract or lease effectively terminates the contract or lease. See In re Port Angeles Waterfront
Assocs., 134 B.R. 377, 380 (Bankr. 9th Cir. 1991) (lease); In re Columbia Gas Sys., Inc., 134
B.R. 808, 813 (D. Del. 1991) (executory contract); R & O Elevator Co. v. Harmon, 93 B.R. 667,
671 (D. Minn. 1988) (executory contract); In re Giles Assocs., 92 B.R. 695, 696 (Bankr. W.D.
Tex. 1988) (lease).






 Giddings cites two cases for the proposition that rejection of a lease or executory
contract does not result in termination of the lease or contract. In In re Garfinkle, 577 F.2d 901
(5th Cir. 1978), the debtor was both lessor and lessee of the subject property. The court held that
a third party mortgagee's interest in the debtor's leasehold was not destroyed by the trustee's
rejection of the lease for the debtor's estate in her capacity as lessee. Id. at 904. In In re Picnic
'N Chicken, Inc., 58 B.R. 523 (Bankr. S.D. Cal. 1986), the court adopted Garfinkel's holding that
a lease where the debtor was a lessee was not terminated upon the trustee's rejection of the lease. 
There, the debtor was involved in a complex sale and lease-back arrangement with its creditor. 
The court held that the "lease" was a financing lease and therefore fell outside section 365
altogether. These cases do not hold that executory contracts remain enforceable after rejection;
they limited their holdings to situations where a debtor-lessee was involved. Accordingly, they
merely stand for the proposition that rejection in bankruptcy proceedings does not abrogate real
property rights. See Michael T. Andrew, Executory Contracts Revisited: A Reply to Professor
Westbrook, 62 U. Colo. L. Rev. 1, 10 (1991). Moreover, in Garfinkel and Picnic 'N Chicken the
court was concerned with the security rights of third persons. See Michael T. Andrew, Executory
Contracts in Bankruptcy: Understanding "Rejection," 59 U. Colo. L. Rev. 845, 876 n.130 (1988). 
No such rights are involved in the present cause. Furthermore, even if the contract were a lease,
Dodd's was the lessor, not the lessee. Finally, even if Garfinkel and Picnic 'N Chicken hold that
executory contracts survive rejection, we do not adopt their holdings. We conclude that the gas
supply contract was terminated on October 9, 1987, immediately preceding the commencement
of bankruptcy proceedings. (6)


Subordination Agreement

 At oral argument, Giddings asserted that even if the gas supply agreement were
unenforceable against Dodd's, it was independently enforceable against Lee Savings and,
accordingly, appellees because of the subordination of lien agreement between Giddings and Lee
Savings. Giddings's brief also suggests that Lee Savings was in fact a party to the gas supply
agreement and therefore bound to honor the exclusive license provision irrespective of Dodd's'
bankruptcy proceeding.

 The subordination agreement protected Giddings's rights under its contract with
Dodd's in the event Lee Savings foreclosed its lien on the gas station property. Lee Savings did
not sign the gas sale contract or agree to be bound by it independently; it agreed to the terms of
the contract and promised that Giddings would retain its rights under this contract upon default
of Dodd's' obligations on its promissory note with Lee Savings. We have held that the gas sale
contract was terminated on October 9, 1987. Accordingly, Giddings no longer has any rights
under the contract that it can enforce against Lee Savings or Peterson as owner of the subject
property.



CONCLUSION


 By showing that the gas-supply agreement was terminated, appellees have negated
an essential element of the plaintiff's claim of tortious interference--the existence of a contract. 
They are thus entitled to summary judgment.

 We additionally conclude that Giddings has failed adequately to explain why the
district court's judgment cannot be affirmed on the other bases raised by appellees in their motion
for summary judgment. Giddings's sole contention is that "Peterson and Mutscher presented no
summary judgment evidence to support their allegations other than pleadings which do not
constitute summary judgment proof." Appellees contended that the agreement was void as a
matter of law because it violated statutory anti-trust provisions and was an illegal restraint on the
property's alienation; appellees further contended that as a matter of law Peterson could not
interfere with a contract he was bound to follow, as alleged by Giddings. All of these bases could
have been decided as questions of law by the district court, and Giddings does not present
contrary legal authority or material facts precluding summary judgment. We note that Texas law
clearly supports appellees' argument that a party cannot tortiously interfere with his own contract. 
See Rural Dev., Inc. v. Stone, 700 S.W.2d 661, 667 (Tex. App.--Corpus Christi 1985, writ ref'd
n.r.e.). 

 We overrule Giddings's point of error and, accordingly, affirm the judgment of
the district court.



 

 Marilyn Aboussie, Justice

[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: July 7, 1993

[Publish]
1. The record, including the bankruptcy-court docket sheet, does not reflect that the trustee
ever assumed the Giddings contract or any other executory contract. 
2. See 11 U.S.C.A. § 362 (West 1993).
3. Giddings alleged other complaints in its petition, but on appeal it alleges only intentional
interference with its contract.
4. The record indicates that, regardless of the sixty-day deemed rejection rule in section
365(d)(1), the trustee never assumed any contract or lease. Assumption of a lease requires
specific court approval. In re Spencer, 139 B.R. 562, 564 (Bankr. M.D. Fla. 1992). If the
trustee rejects an unexpired lease where the debtor is the lessor, the lessee may treat the lease as
terminated and seek damages through the bankruptcy proceeding or remain in possession and
offset its damages against future rent payments. 11 U.S.C.A. § 365(h)(1), (2) (West 1993). 
5. Although it is unclear whether Giddings ever filed a claim in bankruptcy court, the record
reflects that the trustee reported no dividends were available to pay any claims at the end of
bankruptcy proceedings.
6. Two legal scholars have suggested that when the trustee in bankruptcy rejects obligations
contained in executory contracts, the entire contract is not terminated. Covenants not to compete,
intellectual property licenses, and specific performance rights would thus be enforceable by the
other party to the contract after the debtor's discharge from bankruptcy. See Andrew, Executory
Contracts Revisited, supra at 18; see generally Jay Lawrence Westbrook, A Functional Analysis
of Executive Contracts, 74 Minn. L. Rev. 227 (1989). The federal courts have largely adhered
to the proposition that the entire executory contract is terminated upon rejection of the debtor's
obligations. But see In re Drexel Burnham Lambert Group, Inc., 138 B.R. 687, 708 (Bankr.
S.D.N.Y. 1992).


 Even if we were to adopt Andrew's and Westbrook's position, our result in this cause would
not change. Here, Lee Savings foreclosed upon the subject property after the bankruptcy court
lifted its automatic stay. Accordingly, Lee Savings foreclosed upon a lien owed by Dodd's'
bankruptcy estate, not Dodd's as a post-bankruptcy entity. A creditor may not directly enforce
contractual rights against the estate or alleged successors to the estate's executory contracts, such
as Lee Savings and Peterson. A creditor may only recover damages in the bankruptcy proceeding
along with other creditors. See Andrew, Executory Contracts in Bankruptcy, supra at 865 n.84
(noting that Bildisco, 465 U.S. at 532, states that from the moment of the petition's filing in
bankruptcy, a contract is not enforceable against debtor's estate); Westbrook, supra at 324
(creditor's rights during bankruptcy proceeding are limited after rejection). Lee Savings
foreclosed its subordinated lien during, not after, Dodd's' bankruptcy proceeding. Therefore,
even if the licensing provision were to survive rejection, it would be enforceable against Dodd's
but unenforceable against Lee Savings or Peterson.