BARNETT v BLACHURA

Docket No. 211108. Submitted February 8, 2000, at Detroit. Decided
        August 29, 2000, at 9:15 A.M.

Larry Barnett brought an action in the Oakland Circuit Court against
    Marvin and Judith Blachura, seeking specific performance of a con-
    tract for the sale of realty by the defendants to the plaintiff. On
    motion by the defendants, the court, Gene Schnelz, J., granted sum-
    mary disposition of the action and ordered that the matter be arbi-
    trated pursuant to an arbitration clause in the contract. Before the
    matter could be arbitrated, the defendants filed for bankruptcy. The
    bankruptcy court subsequently ordered that the automatic stay of
    state court proceedings be lifted and that the bankruptcy estate,
    pursuant to the business judgment rule of the Bankruptcy Code, 11
    USC 365(a), not assume the executory contract for the sale of
    realty. On motion by the defendants in the circuit court, the court,
    Alice L. Gilbert, J., vacated its order granting summary disposition
    and sending the matter to arbitration, and dismissed the plaintiff's
    claim with prejudice, ruling that the circuit court lacked subject-
    matter jurisdiction in view of the jurisdiction of the bankruptcy
    court. The plaintiff appealed.

    The Court of Appeals *held*:

    A bankruptcy estate's decision to reject, or not assume, an exec-
utory contract because the contract does not represent a favorable
or appropriate investment of the estate's resources does not consti-
tute a revocation, repudiation, or cancellation of the contract. Such
rejection has no effect on the question whether the contract is
valid and enforceable under state law. The circuit court in this case
erred in ruling that it was without jurisdiction to determine
whether an enforceable contract existed between the plaintiff and
the defendants.

    Reversed and remanded.

BANKRUPTCY — EXECUTORY CONTRACTS.

    A decision by a bankruptcy estate to reject, or not assume, an execu-
        tory contract because the contract does not represent a favorable
        or appropriate investment of the estate's resources does not consti-
        tute a revocation, repudiation, or cancellation of the contract; such

rejection does not change the substantive rights of the parties to the contract (11 USC 365[a]).

*Phillip Strehle,* for the plaintiff.

*Jacob & Weingarten, P.C.* (by *Stephen M. Landau* and *Brian D. Figot*), for the defendants.

Before: HOLBROOK, JR., P.J., and KELLY and COLLINS, JJ.

PER CURIAM. Plaintiff appeals as of right an order of the circuit court dismissing with prejudice his complaint for specific performance of an alleged contract to buy and sell land. We reverse and remand.

The property at issue is located at 9457 Dixie Highway in Springfield Township, Oakland County, Michigan. On November 4, 1994, plaintiff submitted an offer to purchase the subject property for the sum of $360,000, with $125,000 down and the balance to be paid on a five-year land contract. Plaintiff paid $5,000 in earnest money. An addendum to the purchase agreement states that plaintiff's "offer shall be valid until November 7, 1994, and if not fully executed within that time shall be null and void." Nonetheless, defendants signed the purchase agreement on November 9, 1994. Apparently, plaintiff did not know until after this alleged acceptance that the property, along with two other parcels, served as security for a $700,000 mortgage loan made to defendants. The mortgagee then and now refuses to release its lien on the premises.

On June 26, 1996, plaintiff filed this action seeking specific performance of the purchase agreement. In lieu of filing an answer, defendants responded with a motion for summary disposition. Defendants argued

that as a matter of law, plaintiff could not seek specific performance of a purchase agreement that was, by its own terms, null and void when executed. In the alternative, defendants argued that the agreement included a standard arbitration clause, requiring that any and all disputes arising under the purchase agreement be submitted to binding arbitration.

Plaintiff countered that defendant Marvin Blachura testified at his deposition that he fully intended to enter into a contract when he signed the purchase agreement on November 9, 1994. Plaintiff further asserted that, there was nothing to arbitrate because defendants had been unable to clear title to the property and plaintiff had not wavered from his intention to close on the sale.

In reply, defendants cited ¶ 7 of the purchase agreement, which states, in pertinent part: "If the Seller is unable to remedy the title or obtain title insurance within the time specified, the deposit shall be refunded forthwith in full termination of this agreement." Without specifically finding that a valid contract existed, the circuit court granted defendants' motion for summary disposition[1] and ordered that the matter be submitted to arbitration.[2]

The issue whether the circuit court had spoken on the validity of the contract was subsequently raised at

---

[1] Given the court's reliance on the arbitration clause, we conclude that summary disposition was granted under MCR 2.116(C)(7).

[2] It appears from the transcript of the hearing on defendants' motion for summary disposition that the court initially was under the belief that the parties had agreed that the purchase contract was valid. In response, defendants' counsel noted that this point was not being conceded and that defendants were still pursuing their arguments that the purchase agreement was either null and void when signed by defendants or that plaintiff's damages were limited to refund of his deposit money.

a January 29, 1997, hearing held on defendants'
motion to compel arbitration and removal of lis
pendens together with plaintiff's motion for injunctive
relief. The record reveals that plaintiff was operating
under the belief that because the matter had been
submitted to arbitration, this necessarily meant that
the court had found a contract to exist. Defendants
rejected this assumption, reasserting in a letter dated
January 21, 1997, that the contract is "null and void."
At the January 1997 hearing, the following exchange
took place between counsel for plaintiff and the
court:

> *Plaintiff's Counsel:* [W]e all agreed that your honor
> awarded arbitration. What [defense counsel is] trying to do
> now is, . . . he wants the arbitrators to decide whether or
> not there's a valid contract. The law says you can't do that.
> He's doing exactly what your Honor said I couldn't do on
> December 18th. He's trying to have his cake and eat it too.
> Either it's in the court or it's in arbitration.
>
> *Court:* It's in arbitration. Let the . . . arbitrators decide.
> It's got to come back to me ultimately. If there's objections
> because they exceeded their authority, I'll listen to it at that
> time.
>
> *Plaintiff's Counsel:* Okay. So they do decide the
> validity—
>
> *Court:* I suggest you argue to the arbitrators.

In the order denying both parties' motions, the court
specifically ordered "that the issue of the validity of
the contract between the parties be argued at arbitra-
tion." We therefore conclude that the trial court did
not decide if a valid contract existed.

In September 1997, before the matter could be arbi-
trated, defendants filed for bankruptcy, thereby stay-
ing further proceedings. 11 USC 362. On January 22,
1998, the bankruptcy court entered an order lifting

the automatic stay in response to a motion filed by plaintiff. The bankruptcy court also ordered that plaintiff "shall be allowed to proceed against the Debtors in the state court case . . . pending in the Oakland County Circuit Court."

Next, the bankruptcy court ordered that the executory contract to purchase the property be rejected pursuant to the Bankruptcy Code's "business judgment rule," 11 USC 365(a). In so doing, it specifically stated it was not making any finding on the validity of the alleged contract. In effect, the bankruptcy court was simply operating in anticipation of any finding on the validity of the contract. If no contract were found to exist, then the motion to reject the bankruptcy estate's assumption of the contract would be meaningless. However, if a contract were found to exist, then the bankruptcy court's order indicates that the bankruptcy estate will not become a party to it.

Returning to the circuit court, defendants argued that the order compelling arbitration should be vacated and summary disposition granted in their favor on the ground that the bankruptcy court's order rejecting the executory contract barred any further action. In short, defendants were arguing that the rejection of the executory contract operated as a revocation of the offer or a cancellation of the contract. Without addressing the merits of defendants' argument, the circuit court ordered that its previous order granting summary disposition to defendants and sending the matter to arbitration was vacated, and dismissed with prejudice plaintiff's claim.[3] The court rea-

---

[3] The judge sitting at this time was not the same judge who had ordered the matter into arbitration approximately fifteen months earlier.

soned that such actions were appropriate "in view of the fact that the subject matter of this litigation . . . involves property that's under the jurisdiction of the Bankruptcy Court."

Plaintiff argues on appeal that the circuit court erred in divesting itself of subject-matter jurisdiction. We agree.

As an initial matter, we turn to the issue whether the bankruptcy court's order rejecting assumption of the executory contract by the bankruptcy estate canceled or in any manner terminated the contract. We have not been able to find any Michigan cases addressing this issue, and there is some disagreement in the foreign cases we have identified. Compare *Giddings Petroleum Corp v Peterson Food Mart, Inc*, 859 SW2d 89, 93 (Tex App, 1993) (holding that an executory contract deemed rejected effectively terminated the contract as of the filing of the bankruptcy action), and *In re R & O Elevator Co*, 93 Bankr 667, 671 (D Minn, 1998) ("Rejection of an executory contract terminates the obligation of the parties under the contract . . . ."), with *In re Drexel Burnham Lambert Group, Inc*, 138 Bankr 687, 709 (SD NY, 1992) (observing that "rejection of a contract does not terminate such rights that arise from rejected contracts"), and *In re Murphy*, 694 F2d 172, 174 (CA 8, 1982) (observing that "rejection of an executory contract in accordance with applicable provisions of the Bankruptcy Act is not the equivalent of rescission").

Following careful review, we agree with those cases holding that rejection of an executory contract does not constitute a cancellation or termination of the contract. In reaching this conclusion we find persuasive two law review articles that have addressed

this issue. In *Executory contracts in bankruptcy: Understanding "rejection,"* 59 U Colo L R 845, 848-849 (1988), Professor Michael T. Andrew observes that

> rejection is not the revocation or repudiation or cancellation of a contract or lease, nor does it affect contract or lease liabilities. It is simply a bankruptcy estate's decision not to assume, because the contract or lease does not represent a favorable or appropriate investment of the estate's resources. Rejection does not change the substantive rights of the parties to the contact or lease, but merely means that the bankruptcy estate itself will not become a party to it. Simply put, the election to "assume or reject" is the election to assume or not assume; "rejection" is the name for the latter alternative.

Professor Jay Westbrook also agrees that rejection does not affect the continuing existence of the contract. Commenting on how the courts have dealt with executory contracts in bankruptcy proceedings, Westbrook criticizes court decisions "positing that obligations owed [to the nondebtor] can be rejected right out of existence." Westbrook, *A functional analysis of executory contracts*, 74 Minn L R 227, 239 (1989).[4]

Further, we conclude that rejection is not an extension of the trustee's special avoiding power available under the Bankruptcy Code. See Professor Andrew's article, *supra* at 919-929. Instead, under 11 USC 365(g)(1), "the rejection of an executory contract . . . constitutes a breach of the contract which relates

---

[4] While the approaches taken by Andrew and Westbrook differ in many respects, see Andrew, *Executory contracts revisited: A reply to Professor Westbrook*, 62 U Colo L R 1 (1990), the two men agree on the essential point that rejection of an executory contract does not result in cancellation or termination of that contract.

back to the date immediately preceding the filing of a petition in bankruptcy." *NLRB v Bildisco & Bildisco*, 465 US 513, 530; 104 S Ct 1188; 79 L Ed 2d 482 (1984).

Accordingly, the nondebtor is left with a claim in the distribution of the estate that should "be presented through the normal administration process by which claims are estimated and classified." *Id.*

Therefore, because the bankruptcy court's presumptive rejection of the executory purchase contract does not amount to a termination, the question whether a contract to purchase the property exists remains unanswered. We believe this question of contract law is best resolved in our state courts. *Kauffman v Chicago Corp*, 187 Mich App 284, 287; 466 NW2d 726 (1991) ("The question regarding the existence of a contract is governed by general contract principles found in state law."). If the answer is that no contract exists, then the matter is effectively resolved. If a contract is found, then plaintiff has the option to pursue his unsecured claim for prepetition damages through the normal bankruptcy process. *In re Child World, Inc*, 147 Bankr 847, 852 (SD NY, 1992).

Reversed and remanded to the circuit court for a determination whether an enforceable contract to purchase property exists. We do not retain jurisdiction.

KELLY J. I concur in the result only.